Mr. Fry was convicted of multiple counts of security fraud, wire fraud, and false statements. The principal issue in this appeal is whether Mr. Fry's decision to exercise his right to stand trial, instead of pleading guilty, had any bearing at all on his sentence of 17 and a half years. That can't be the question, because we already know under the guidelines that there's a difference in the advisory range. Certainly it is. It can't be whether any bearing on it. Well, the question is, is whether or not there is a reasonable appearance of vindictiveness. And that is the real question here. And the guidelines don't really come into play on that. That's a question for whether the sentence was procedurally or substantively unreasonable. You said the question is whether the choice to go to trial had any bearing on the sentence. And if a person pleads guilty, then he gets a lower advisory range. So it obviously has some bearing, and that doesn't trigger special analysis. I don't disagree with you, Your Honor, because you get two or three levels off from that. The standard isn't right. No. It doesn't have any bearing. The question is, is whether or not there's a reasonable appearance of vindictiveness. I want two things from you. Yes, sir. The names and the sentences of those who were his, I think, co-defendants, very closely him, how much time they got. And I know they cooperated, and they got some time off for cooperation. But what the proposed sentence was before the cooperation, and then that's one thing. I want to know how much money was involved with those co-defendants as compared to Mr. Frye. We contend that there are three defendants that are similarly situated. Two were co-indictees in the same indictment. One was Bruce Prevost, P-R-E-V-O-S-T, and he was involved with Palm Beach Funds. He was sentenced to 90 months. The second was David Herold, and he was also 90 months, Your Honor. I'm sorry. Was that before or after? That was after cooperation. The judge at sentencing said that he would have sentenced both the defendants, Prevost and Herold, to 120 months absent their cooperation. Yes, sir. Is that a minimum? Was there a minimum mandatory? No, sir. There's none? None. All right. So each of those people would have got 10 years before the cooperation, and your man got 17 1⁄2. Yes, sir, with no cooperation, and he went to trial. One other thing was what was the amount of loss attributable to the fraud of these other two? Prevost and Herold were both involved with Palm Beach Funds, and the amount of loss was $720 million. The amount of loss in Mr. Frye's case was assessed at $130 million, so their loss was a magnitude larger. There's a third defendant, Your Honor, that we contend also is similarly situated, and that's Gregory Bell. He was indicted in a different case, but it was all involved in the Petters case, and Gregory Bell was similarly situated because he also ran and owned an investment fund that invested in Petters, and he got 72 months. He likewise cooperated, but he did not get a 5K1 motion. Was he the same judge? Same judge, yes, Your Honor. Mr. Kyle has had all of these Petters and all of the fallout and all the people involved with Petters, so he's been in this thing pretty well, but with the exception of was anybody go through trial except Petters went through, and he got 50 years? Correct. Anybody else? No, sir. All the rest pleaded? Correct. And in regard to Mr. Bell, I would answer the court's question that his loss was also larger than Frye's. It was estimated to be between $205 and $210 million. So we contend that we have three defendants that are What about all the language from the Supreme Court about individualized sentencing and how the court can take into account all kinds of factors, including things that don't even appear from the record? And that's why there has to be discretion in individualized sentencing. Why should we infer that this was because of vindictiveness when there's nothing in what Judge Kyle said to suggest vindictiveness? It could just be that things about the individual cases, the individual defendants led him to think that a different sentence was appropriate. I understand the court's point well, and the difference is that beginning with the group of cases with Pierce v. North Carolina in 1969 and leading up to Goodwin, the Goodwin case, the court has held that when there is a situation or objective facts that show there's a reasonable likelihood of vindictiveness, and here we contend it's the large disparity in the sentences, then because of the That's all you have is the large disparity in the sentence, what you call a large disparity. Yes, with three defendants that are very closely situated, very similarly situated. And in those situations, the Supreme Court has held, and this court has followed it in several cases cited in our brief, that there is a presumption of vindictiveness because of the difficulty of proving or even alleging actual vindictiveness. I don't think you have a Supreme Court case based on disparity in sentences. No, I don't. But the principles, you know, the Supreme Court has held that if there is a The judge says I'm going to give you more if you go to trial, then they've held that But if you have a situation just like in Pierce where there's a disparate result, a disparate sentence, and there's no explanation in the record for that disparity, then there is a presumption of vindictiveness. And that's Pierce, it's Goodwin, it's Borden, Kircher, and it's Blackledge. What are you asking for, assuming that we find some merit? I do want to emphasize the modesty of what we're asking, Your Honor. We're not asking to overturn any of the convictions with the exception of one count as to multiplicity. That goes way out. That's it. And we're not asking for his forfeiture to be reversed or anything else. We're not asking this court to find What are you asking us to do on the sentence, I think is the question. Remand for resentencing so that the judge can reconsider what went into his sentencing and, if appropriate, resentence Mr. Frye. This court said in Hess that You just wanted to go back to Judge Kyle and have him explain why, in more detail, why he's chosen this sentence or adjust it if he doesn't think he can. Correct. That's all we're asking. And, as this court said in Hess, that relief is relatively painless in these circumstances. And that's all Your opponent brings up, and that is there's some extra charges against Frye, which were not against the others. But it's not uncommon when somebody decides to go to trial for the prosecutors to add all the possible charges. We do not know, is that correct, about whether there could have been additional charges against any of these co-defendants or others? We don't know that's correct, but I will say that there is a difference here. And Frye testified in deposition, three days of depositions, in front of the SEC. And he was convicted for false statements on those three counts. That is, I think, a distinguishing point that the prosecution or the government raises that I think is correct. However, the real problem here is we don't know how and if that affected Judge Kyle's sentence. The only comment he makes about the SEC counts during his entire sentencing transcript is he has, he lied before the SEC. Without more, that does not explain why the judge gave such disparate sentences. There's some criticism by the authorities saying that the guidelines of fraud cases are just too harsh, as well as there's another area, too. But if I recall, there's some writings about the runaway sentences and fraud cases. Well, and what they run into, Judge, and I've read some of those, I believe, is a situation where you have loss-driven guidelines in a big fraud like this. Are you referring to law review articles? Yes, sir, I am. All right. Just wanted to be clear what we're – Yes, I am, Your Honor. What authorities we're talking about. Yes, sir. And in this case, for instance, the guidelines were 1,450 months. That's 120 years. And nobody, I think – I stand to be corrected, but I think I am correct in stating that none of the defendants in the entire Petters matter were sentenced within the guidelines. And, in fact, the government got up at sentencing in Mr. Frye's case and asked for a departure from the guidelines. They didn't say it's a departure from the guidelines, but they asked for 25 years. And that's a departure from the guidelines. But there's no discussion here about whether or not there should be a departure from the guidelines. What was the bottom line on the guidelines? The bottom line was 1,450 months, which is a life sentence. Yeah. And this man is 60 years – How old is he? He's 60 years old. As were the three comparators, were very similar. He never practiced, did he? No. He was a dental surgeon. You're exactly correct, Your Honor. But then he worked for a couple of brokerage firms, and then he founded Arrowhead Investments that was involved in other investments as a hedge fund before the Petters matter came up. And he's 60 years old. He has no prior record except a DUI in 2004. But didn't he design this fraudulent hedge fund scheme? And isn't that – I mean, that seems to me a tremendous difference between this defendant and the others that you've mentioned. Well, what Mr. Frye did was he happened to be the first hedge fund that was recruited into this. And then primarily co-defendant Venice took his paperwork and gave it to Prevost and Herald, and they copied it. And the government makes out like Mr. Frye designed this thing in mind of other people using it and other people pursuing this Ponzi scheme, even though they said that Mr. Frye was not involved in the Ponzi scheme other than investing money in it. So what they're trying to do is say he's responsible for that. In fact, these were competitors of Frye's. They stole his paperwork. All he tried to do was – The court found he was an organizer, a leader of the activity. Because he had five employees at his hedge fund. And if you look, I don't have access to the PSI – Or participants in the criminal activity. That's what you've got to have. Well, I understand. And that was not objected to at trial. One of them clearly was because she pled guilty and was sentenced. But I don't have access to the pre-sentence reports of the other defendants, but they ran hedge funds that also had multiple inquiries. Now, on this notion that was raised earlier about how the government will often add more charges if somebody goes to trial, wasn't your man charged with these SEC counts from the beginning? He was, but he was the last defendant indicted in this case. There wasn't anything added because he said, I'm going to go to trial. No, that's not an issue. He was charged all along with the – He was, but he was named in the third superseding indictment. He wasn't even indicted originally with these other defendants. He was the last man standing in this case. Were there – I don't want to know what they were, but were there negotiations for a deal in this case? There's nothing in the record to indicate that, and there was no plea bargain that broke down or – All right. All right. We'll let you save the time for rebuttal, Mr. Jenkins, and we'll hear from Ms. Fenson. Good morning. May it please the Court. My name is Assistant United States Attorney Kimberly Fenson, and I represent the government. Were you the trial attorney? I was one of three trial attorneys in this case, yes, Your Honor. I want to make it clear from the outset that this is not a case where there's any evidence of actual vindictiveness by Judge Kyle in the case. And, in fact, there's ample evidence here that Judge Kyle scrupulously safeguarded this defendant's trial rights and was anything but vindictive toward him. In particular, on the eve of trial, which was a large trial that had taken a long amount of time to prepare and many resources, the Court granted Mr. Fry a three-month continuance over the government's strong objection to ensure he would have ample time to prepare. Following sentencing, the Court denied the government's motion to detain the defendant, although the burden had shifted to him to prove that he wasn't a risk of flight. After that, Mr. Fry missed his deadline for filing an appeal. Now, if Judge Kyle had intended to be vindictive and vindictively sentence Mr. Fry, the easiest thing to do in response to his motion containing no real reasons for his failure to file on time would have been to exercise his discretion to bar him from making such an appeal. But Judge Kyle didn't do so. I know Judge Kyle from way back. He's a very fair man. But what I need for you to tell me in this case, here you've got three other people, more money, and usually it's the bottom line is how many people lost money in determining how much to give somebody. And these white-collar criminals, I have no sympathy for them, but the fact of the matter is they seldom get involved again. Some do, some don't. But I'm bothered by the two of the co-defendants and the third person who really defrauded people of more money, and I know they cooperated, and that's important, but apart from the cooperation, this person got seven and a half years more than the tenure which the other would have had, which is a long time anyway, and I'm bothered by it, I'll tell you the truth. So make me feel at ease finding for the government. Okay, let me go straight to that. I want to first talk about the facts relating to that, and then I want to address it in both the context of sentencing vindictiveness, which I think has been conflated a little bit with the standards for sentencing review. So first of all, there were a lot of facts which Judge Kyle was aware of at the time of sentencing that distinguished Mr. Frey from the other defendants who were sentenced. And I guess I would say first that Mr. Frey, well, the government took the position that the loss amount was not the only fact that the court should look to, and there were many other facts involved here. Mr. Frey, as Judge Shepard pointed out, was the first person who put together the hedge fund structure that invested people in the Petters Ponzi scheme. And I would notice that Mr. Jenkins said Venice took his paperwork because it was indeed Mr. Frey's paperwork, as he made the point during trial. Mr. Venice was not a financial professional. Mr. Frey was. Mr. Venice was a former pawnbroker. He had no ability to set up a special purpose vehicle system such as the one that Mr. Frey put together here. Frey started lying to investors about important safety features of the investment all the way back in the late 1990s. If he had chosen to tell the truth to investors at that time, if that had been made public, that money wasn't really coming back from the big box retailers, as he had said. And as Judge Kyle pointed out at sentencing, this whole thing could have come to an earlier end. There were some other distinctions. In addition to the other defendants' cooperation, Greg Bell pled guilty approximately a month after he was arrested, back in 2008, and cooperated with the government from then forward. Prevost and Herald pled guilty the day that they were indicted by the grand jury, and all three of those defendants made assets available for investors who had been victimized by the scheme. Unlike Mr. Frey, who continued to live off the proceeds of the investors, continued to hold on to that money, continued to actually sell off assets up to the month before trial. Another distinction was, as the court pointed out, that Mr. Frey had an enhancement for being a leader or organizer, and it wasn't just that he had employees. He sucked those employees into the scheme. He caused those employees to make misrepresentations to auditors about important safety features of the funds, misrepresentations to investors. He advised Ms. Palm to both lie to the SEC and lie to the government in interviews, and that led to her being charged as well in the case. So there were a lot of distinctions among these defendants that the court was aware of because of all of the evidence that the court heard at trial. In the context of vindictive sentencing, an important case that Mr. Jenkins did not address is the Alabama v. Smith case, and that is a case in which a defendant received one sentence after pleading guilty, then withdrew his plea, then went to trial and received a higher sentence. Mr. Jenkins attempts to distinguish that case because it was the same defendant in Smith that had first pled guilty, gotten one sentence, then withdrew his plea, got a higher sentence. But I would submit that there is an even more compelling reason for applying the logic and the reasoning behind the Smith case here because in the Smith case, clearly it was the same person. It was one person who engaged in obviously identical conduct and then got two separate sentences. And in that case, the Supreme Court found that that higher sentence was not more likely than not attributable to sentencing vindictiveness because relevant sentencing information available to the judge after the plea was considerably less than that available after a trial. And that is why there was no realistic likelihood in that case that the sentence was vindictive and the presumption was not applied. You know, Ms. Spence, in the next case where you have a plea bargain discussion, you'll have a wonderful statement to make to the opponent and say, okay, you want to go try your case? You just take a look at what Fry did. And go ahead and try your case. You're going to get the same treatment. You know, that's what comes out of this case when you look at it. And it's an awful powerful argument to force people who may have a defense not to go to trial. And there's been some recent articles about, I'm not saying this is true in the state of Minnesota, and U.S. Attorney in Minnesota, but there are places where that's used and very often. And the prosecutors have an awful, awful lot of power under the guidelines and under the sentencing practices in this country right now. Your Honor, I understand what you're saying. I think it's fair for a defendant to take into account in thinking about whether to plead guilty the fact that there might be a lot of additional evidence out there that a court might hear at trial that might be more compelling in terms of the court giving a higher sentence than it would be on a cold record if the defendant were to plead guilty. As the court is probably aware in this case, there was some evidence that came out at trial to the effect that Mr. Fry had hired a private investigator to investigate whether these purchase orders were genuine and learned back in 2002 that there were substantial problems with the purchase orders. That's the type of evidence that a defendant can rightly figure will come out at trial if they're to choose to go forward because the government is entitled to put in its case. And it's fair for the court to take that into account in sentencing. What the defendant is really asking for here, I think, is for a rule that says the judge has to close its eyes to all of that evidence that comes in at trial and that he's entitled to be sentenced as though the trial never happened and that the court should ignore that information. For your time, in my earlier days when there weren't sentencing guidelines, we had a judge, just a judge in any circuit, who, when faced with a defendant and wanted to go to trial, would say, I got a whole card, you know. And we reversed them. I think that's the type of comment which, in that long, bulby Meechum line of cases and others that don't apply here because Judge Kyle didn't make any comments like that, where there would be some kind of presumption applied. Well, what's wrong with what your opponent says? All we want is just modest help. Judge Kyle did not. He explained why he sentenced this man to 17 and a half years, but he didn't explain the difference. What's wrong with asking him to reconsider, give us the reasons, and if he can give us satisfactory reasons, fine. If he can't, maybe he'll change his sentence. I think the problem is that the help that's being requested is not quite as modest as it's being framed for the court today because the court would really have to create a broad presumption that the Eighth Circuit has never applied before, that when there's multiple defendants in a case and a defendant following trial gets a higher sentence, which happens pretty frequently, that there's a presumption that the district court judge vindictively sentenced that person in violation of his constitutional rights. I think that's a very severe... Well, if you don't explain it, it's not that there's vindictiveness. If you don't explain it, there is that unsatisfactory aura of maybe there was, and we should let the district court make sure that he didn't have any whole cards, so to speak. Two things are that that extra explanation only applies if the court applies the presumption of vindictiveness, and the other thing is that this rule would allow a defendant an end run around all of this court's precedent related to procedural and substantive reasonableness, and that deferential review doesn't require the kind of detailed explanation that the defendant is asking for. It allows this court to look to the entire record that was before the court at sentencing and all of the information that the court was aware of in determining that the district court was aware of the issues under 3553A, and what this defendant wants is a more strenuous standard under 3553A6 related to unwarranted sentencing disparities among similarly situated defendants. The case law under procedural error and substantive reasonableness is not in his favor in terms of remanding this case. The judge did a sufficient amount of explanation, and based on the entire record, it's clear that the court considered that, and so because he can't prevail on procedural error and substantive reasonableness, he's asking this court to apply the presumption that he was vindictively sentenced. That's a harsh presumption to apply to what's going to turn out to be a broad class of district court judges. If we did remand it, how would we know that Frye, if we thought there was some unwarranted disparity here, how would we know that Frye's sentence is too long as opposed to the other three being too short? The court would not, and as the court knows from having probably drafted the opinion in the McDowell case, there is case law here in the Eighth Circuit that says that even where there are no legitimate distinctions between the defendants, which as I've already explained, there are several legitimate distinctions here that make them not similarly situated, but even if there are no legitimate distinctions, there's no basis to say that Prevost, Herald, and Bell didn't receive sentences that were too low, and I think there's a strong argument that that's potentially the case, given the large amount of money that these defendants stole. Because the guidelines for this man were, how many years was the recommended sentence by the commission? So the guidelines, I believe, was 1,440 months, which would amount to a life sentence. More than 100 years? Exactly. Ridiculous, isn't it? I don't know if I would say that it's ridiculous, Your Honor. 1,042 months, would you be up here defending that sentence, too? We wouldn't be because— Or would you be saying, you know, that guideline? Like the Attorney General said in his speech, the system is broken, and that would be a good example of it. And of course, Judge Kyle did not pay attention to it either. I don't think any judge would. I think that the judge paid attention to the guidelines in the sense that it's one of the 3553A factors to take into account, and the judge was aware of several specific sentencing enhancements that applied, that counseled in favor of a higher sentence for Mr. Fry than the other defendants. We would not be up here defending a 1,440-month sentence because we only asked for 25 years in the case. Having compared this defendant to the other defendants and made some reasoned arguments about why his sentence should fall where it did. Help me with this, and I think I'm remembering correctly, but you can . . . 220 years, that's all. You can verify, but didn't the district court in this case specifically mention these other defendants and the sentences that they had received when he was giving his explanation for the sentence here? Yes, the court walked through every sentence that had been given up to that point. Mr. Prevost and Mr. Harold were not sentenced until about a month later, but the court walked through all of the sentences for Petters and the co-defendants that were in that case, as well as Mr. Bell and others. The court also said that he had heard and understood Mr. Friedberg's sentencing disparity argument. The court heard extensive argument about this both at the sentencing and then in the papers because it was really the main focus of the defendant's arguments related to sentencing. What was the effect on the victims in this case? Who were the victims in this case? There were a variety of victims in this case. Mr. Fry ran an onshore and an offshore hedge fund, so most of the victims in the offshore hedge fund were various other hedge funds that had invested. As you kind of go down through the chain, there are different types of investors, both institutional and then IRA investment type investors that would be in there. In the onshore hedge fund, there were both other hedge funds consisting of individuals who had put in money. There were some individuals that the court heard from at trial. I can think of one in particular who had just put in money directly to the hedge fund, and he testified and also provided a letter to the court describing how the fraud had deprived him of money that he had set aside for his children's college education. The government quoted that letter at length in its sentencing position pleading. Okay, thank you for your argument, Mr. Jenkins. We'll hear from you in rebuttal. Judge Shepard, to answer your question first if I could, the judge did list all the disparate sentences in the entire case during sentencing, but he never I'm sorry, Your Honor. The judge did list all the disparate sentences during sentencing. He went through them, read them off. He acknowledged the disparity, but he never explained the disparity, and that's what the cases require in this situation. All right, well, I guess it depends what you mean by explain. He said, I don't think you can match them up. And I argue, Judge, that that constitutes basically a rejection of the idea that disparity is something that needs to be accounted for, as the Supreme Court has said. I thought the Supreme Court said disparity is fine and, you know, is a necessary consequence of the post-Sooker and Gall system because judges can disagree with the guidelines and make their own policy choices. They can, and that's in regard to an unreasonableness argument. What I'm talking about is our vindictiveness arguments. They're very different. Alabama v. Smith, very briefly, we talk about that in our reply brief, that Alabama v. Smith did not overrule Pierce, period. The other distinction I want to make in response is that we are not arguing that Judge Kyle was actually vindictive. What we are arguing is, is that in these circumstances, there's a reasonable likelihood of vindictiveness. And that's all we're asking this court to find. And when that exists, there's a presumption. And when there's a presumption, there has to be an explanation. And here we have no explanation, so we're just asking that it go back. The prosecutor can't offer reasons for the judge. The judge has to offer them. And that was discussed in some detail in long ball. If you agree with this, can't we take into account the arguments that were made by the government at sentencing? As the government went through the differences between these various defendants and explained its contention that Mr. Fry had increased culpability here because of these factors, can't we look at all of that argument because the judge said he took all that into account? The judge did not. The question is whether or not there was any vindictiveness that went into this because of Mr. Fry's exercise of his right to stand trial. And what the prosecution is doing is speculating on what went into Judge Kyle's sentence. And long ball versus Meacham discusses that issue, and the court there said the prosecution can't do that. The judge needs to do that. We can't read the judge's mind. So if there's an appearance of vindictiveness, we've got to send it back to the judge to explain it. What I'm saying is the judge heard the argument. Yes. And the reasons given by the government. Yes. And the court said, I've heard it, and I've taken that into account. Now, can't we consider that as part of the judge's explanation? I don't think it's an explanation, though, Your Honor. He said he took it into account, but he never explained why there was a disparity. If he said, I'll take it into account and I'll tell you, I'm going to give him extra time because of the SEC counts, or I'm going to give him extra time because of the red flags the government talks about. But the judge did not say that. We can't read his mind. This court can't speculate on what was in his mind. All we're asking is to send it back to Judge Kyle and let him look at it one more time. If we end up with the same result, we end up with the same result. Very well. Thank you, Mr. Jenkins. We appreciate the arguments from both counsel, and the case is submitted. We'll file an opinion in due course. Thank you.